888 P.2d 447

Ramiro LOYA, Plaintiff–Appellant,

v.

STATE FARM MUTUAL INSURANCE
COMPANY, an insurer doing business
in New Mexico, and Sallie Loya, a/k/a
Sallie Rodriguez, an individual, Defen-
dants–Appellees.

Wayne SMYTH and Sean Smyth,
Plaintiffs–Appellees,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Defendant–Appellant.

Nos. 21375, 21545.

Supreme Court of New Mexico.

Nov. 16, 1994.

**2**

Berardinelli & Associates, David J. Berardinelli, Santa Fe, for appellant in No. 21375.

Sommer, Fox, Udall, Othmer & Hardick, P.A., Eric M. Sommer, Santa Fe, for appellees in No. 21375.

Simons, Cuddy & Friedman, Thomas A. Simons, IV, Robert D. Sckalor, Santa Fe, for appellant in No. 21545.

Offices of Daniel J. O'Friel, Daniel J. O'Friel, Santa Fe, for appellees in No. 21545.

## OPINION

FRANCHINI, Justice.

We consolidated these two cases on appeal because they each raise the question of whether an automobile insurance policy definition that limits uninsured motorist coverage to only those spouses or relatives who live with a named insured at the time of an accident violates public policy. We hold that such a definition does not necessarily violate public policy, but that under the facts of each of these cases before us, coverage must extend to the plaintiffs.

Ramiro Loya appeals from a summary judgment denying Loya class-one coverage[1] under an uninsured motorist policy issued by State Farm Mutual Insurance Company to Ramiro and his wife, Sallie Loya. The narrow and dispositive issue in his appeal is whether, by defining "spouse" in a manner in which the spouse may at a future point during the life of the policy fail to meet a requirement of coverage, an insurance company may require a class-one insured to forfeit coverage. The uncontroverted evidence shows that at the time Sallie purchased the policy, Ramiro met the policy definition of insured spouse, the couple paid a premium for coverage for both spouses, they purchased the policy with community property, and the parties intended to provide class-one coverage for the couple and their son. We hold that because Ramiro qualified for and

the couple paid for class-one coverage for both Ramiro and Sallie when they contracted for insurance coverage, State Farm cannot deny coverage to Ramiro during the policy period simply because he moved from the residence where Sallie lived and thereby no longer met the policy definition of "spouse." We reverse.

In the second case, State Farm appeals from a summary judgment issued in favor of Wayne Smyth and his son, Sean Smyth. The court held that policy language requiring minor children to live with a named-insured parent in order to be protected under the uninsured motorist coverage is void as violative of public policy. The uncontroverted evidence shows that Wayne intended to provide uninsured motorist protection for all of his children including Sean (who lived with Wayne's former wife), that Sean was dependent upon Wayne for support and that Wayne was a joint legal custodian for Sean. We hold that an insurance company may not exclude from uninsured motorist coverage an unemancipated minor child that the named insured is legally obligated to financially support by inserting a general definition applicable to other relatives in the policy. We affirm the trial court.

*Facts and proceedings—the Loyas.* The Loyas married in 1986 and experienced marital difficulties, separating three times after December 1989. In March 1991, during a period of reconciliation, they used community funds to purchase two automobile insurance policies from State Farm. The policies were for a car ("the Honda") and a truck they jointly owned and both drove. The Honda policy listed only Sallie as the named insured but expressly included Ramiro as an insured on the declarations page and on the proof of financial responsibility card issued for that car. The truck policy listed both Sallie and Ramiro as named insureds, in that order.

---

1. Class-one coverage is discussed in *Konnick v. Farmers Insurance Co.*, 103 N.M. 112, 115, 703 P.2d 889, 892 (1985). The purchaser of uninsured motorist coverage for more than one car and the purchaser's spouse and relatives covered under the policy are entitled to stack, or combine, the policy limits for each car if injured by an uninsured or underinsured motorist. *Jimenez*

*v. Foundation Reserve Ins. Co.*, 107 N.M. 322, 324, 757 P.2d 792, 794 (1988). "First class insureds are covered by policies no matter where they are or in what circumstances they be; coverage is not limited to a particular vehicle." *Gamboa v. Allstate Ins. Co.*, 104 N.M. 756, 758, 726 P.2d 1386, 1388 (1986).

The automobiles were titled in both the Loyas' names; Sallie drove the Honda most of the time.

The policies defined the "named insured" as the "first person named in the declarations" regardless of whether both spouses were named in the declarations as insureds. The policies provided class-one coverage for "the first person named in the declarations" and "his or her spouse." In a separate section of the policies (on a different page) the definition of "spouse" was limited to "your husband or wife while living with you." The policies were renewed for another six months in September 1991 while the couple was still living together.

In October 1991, the Loyas separated for the third time. Ramiro moved out of the marital residence and went to stay with his brother. Ramiro and Sallie each called State Farm and asked to have the other removed as a "named insured" on the policy of the respective automobiles they were driving. State Farm apparently did not refund any premium amounts reflecting a reduction in liability or uninsured motorist coverage on each auto from two covered drivers to one; nor did it issue a new policy on the Honda or notify Ramiro that he was no longer insured under the Honda policy. State Farm did issue a new policy listing only Ramiro as the named insured on the truck.

In December 1991 the couple met to discuss the dissolution of the marriage. Ramiro drove the couple around in the Honda while they were talking. At some point Sallie pulled a gun, they struggled over it, Ramiro threw the gun away, and he got out of the car. Sallie then ran over Ramiro with the car, severely injuring him.

State Farm paid Ramiro the uninsured motorist policy limits on the truck for which he was now designated as the named insured, but denied him the right to stack the Honda policy with the truck policy. Ramiro brought a declaratory judgment action to determine his rights under the Honda policy. After cross-motions for summary judgment were filed, the court held that the Honda policy was clear and unambiguous, that there were no material issues of fact, and that Ramiro should be denied the right to stack because

he was not a class-one insured under the definition of "spouse" in the policy *at the time of the accident.*

■ *Class-one uninsured motorist coverage is determined at the time the policy is purchased.* When a married couple contracts for insurance coverage for the family, there is a presumption that the coverage applies with equal effect to both parties unless one of them is expressly excluded from coverage. Each person is considered to be a purchaser of the contract. *See, e.g., Schmick v. State Farm Mut. Auto. Ins. Co.,* 103 N.M. 216, 217–20, 704 P.2d 1092, 1093–96 (1985) (characterizing wife as a purchaser of policies and holding that she was entitled to stack both policies even though she was not the "named insured" on one of the policies). The insurance company may not unilaterally decide who it will designate as the "named insured" in a contract of adhesion and thereby defeat the rights of the contracting member who does not actually sign the contract but who is a clear beneficiary thereof.

Further, the parties designate who is to be covered under the insurance contract, and the number of persons insured by that contract establishes the amount of the premium, which must be paid in advance. If there is a disagreement between the parties, a court looks at the intent of the parties *at the time the contract was executed* to determine who the parties intended to insure. *See, e.g., Jaramillo v. Providence Wash. Ins. Co.,* 117 N.M. 337, 341, 871 P.2d 1343, 1347 (1994) (remanding case for trial court to consider whether ambiguity existed in defining who was class-one insured by admitting extrinsic evidence of circumstances under which the parties contracted and purpose of contract); *State ex rel. Santa Fe Sand & Gravel Co. v. Pecos Constr. Co.,* 86 N.M. 58, 61, 519 P.2d 294, 297 (1974) ("The meaning of a contract is to be determined and construed with reference to the intention of the parties at the time the contract was made.").

■ It is uncontroverted that at the time the insurance contract was executed, Ramiro was a class-one insured under the policy. State Farm contends that Ramiro lost his rights under the contract of insurance for the

Honda solely because he was not living with Sallie at the time of his injury. It convinced the trial court to examine the facts at the time of the injury rather than at the time the contract was executed in order to determine who was an insured. In essence, State Farm is arguing that it should be relieved from the risks it was paid to insure against because of a personal conflict between beneficiaries independent of the initial risks insured against. This theory has been soundly rejected in other jurisdictions when construing insurance contracts.

For example, in *United Farm Bureau Mutual Insurance Co. v. Brantley*, 176 Ind.App. 178, 375 N.E.2d 235 (1978), a couple, while married, purchased a policy to cover both individuals on a jointly-owned automobile. The husband was listed as the named insured. *Id.*, 375 N.E.2d at 236. The policy, similar to the Loyas' policy, limited coverage to a spouse who was a resident of the same household as the named insured. *Id.* While the policy was still in effect, the couple divorced and the wife was subsequently injured in an accident. The insurance company denied coverage, stating that when the divorce occurred, the wife no longer was covered under the definition of "spouse" in the policy. The court disagreed. It held that the insurance company knew that both the individuals were contracting and paying for coverage; that the contract was not materially altered by the divorce because it did not change the risk-related factors on which the premium was based; and that the insurance company was therefore "not prejudiced by accepting the identical risk which was undertaken when the parties originally contracted for coverage." *Id.* at 237.

The *Brantley* opinion cited to *United States Fidelity & Guaranty Co. v. Winkler*, 351 F.2d 685 (8th Cir.1965), *cert. denied*, 382 U.S. 1026, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966), in which the Eighth Circuit held that in a family automobile policy, the insurer intends to insure both the husband and wife. That court stated that "[w]hen the risks involved are not altered the insurer should not be permitted to deny liability to one spouse on the basis of a subsequent change in marital status." *Brantley*, 375 N.E.2d at 238; *see*

*also* 6C John A. Appleman, *Insurance Law & Practice* § 4352, at 20 (Buckley ed. 1979) (stating that a spouse is considered a member of the same household as the named insured despite separation and separate residency). The *Winkler* court noted that the policy in that case did not make clear whether the insured's status was to be determined on the basis of facts existing at the time the insurance originated or at the time the accident occurred. *Winkler*, 351 F.2d at 687. Because the wife met the definition of spouse at the time the contract was executed,

> taking away the coverage from her would be in the nature of a forfeiture. It is of course well-established that forfeitures are strictly construed. The policy is far from clear in containing any express statement that the status of the named insured once acquired is lost by a subsequent event such as separation.

*Id.* Therefore, the court held that reformation of the contract would be justified. *Id.* at 689.

◼ The *Brantley* and *Winkler* cases are founded upon the principle that a husband and wife each have contractual rights in an insurance policy that, once established and paid for, may not be invalidated because of the language the insurance company chooses to use to describe the parties. Because Ramiro was a class-one insured under the policy at the time it was executed, he is entitled to have the insurance contract construed in his favor. *See Jaramillo*, 117 N.M. at 341–42, 871 P.2d at 1347–48 (stating that the general principle that ambiguities in an insurance policy are construed against the insurer applies to established insureds but not to create coverage for a third party who has not paid for insurance or is not an acknowledged family member).

*The application of the policy definition of "spouse" is ambiguous.* We agree that the meaning of "while living with" is unambiguous. We find ambiguity in this policy, however, when attempting to determine to whom the policy definitions apply and when to apply them. *See, e.g., Schmick*, 103 N.M. at 220–21, 704 P.2d at 1096–97 (finding ambiguity because policy provisions when read together were not easily interpreted, the exclu-

sion logically made no sense and was inconsistent with the purposes of coverage, and the exclusionary clause was difficult to construe because of the necessity of incorporating into the exclusion a complex definition); *cf. Lopez v. Foundation Reserve Ins. Co.*, 98 N.M. 166, 168, 646 P.2d 1230, 1232 (1982) (finding ambiguity because policy failed to address effect of payment of multiple premiums). In response to a request for insurance for each of two married individuals, State Farm sent the Loyas a declarations page describing the coverage purchased. Sallie's name appeared in a block under "Named Insured" at the top of the page and again in the section of the declarations page setting out the coverages. Ramiro's name also appeared in this coverage section. The declarations page instructed the Loyas to attach it to the policy booklet and states that the "policy consists of this page, any endorsements, and the policy booklet." In the policy booklet, the page describing uninsured motorist coverage states that persons covered by the policy are "the first person named in the declarations [and] his or her spouse." Notwithstanding the fact that the word "spouse" is a common word with a generally understood meaning and that each member of the marital union is contracting for coverage, the policy contains a unique definition of "spouse." This definition is located on a separate page that defines other words that are peculiar to the policy. "Spouse" is limited to mean "your husband or wife while living with you." "You" is then defined on the next page as "the named insured *or* named insureds shown on the declarations page" (emphasis added). "Named insured" is not defined, but "insured" is defined as "the person, persons or organization defined as insureds in the specific coverage." Several questions arise out of these unusual definitions and their placement in the policy. First, would a reasonable person contracting for insurance coverage look past the declarations page and the specific coverage page for a definition of a common word if the person had requested insurance and both pages clearly designate the person as a class-one insured? If the person did see the definitions, would the person believe himself or herself to be "you" and not "spouse" if the

person is expressly named as an insured on the declarations page? If one thinks the term "spouse" may apply, would a reasonable person think his or her coverage could be canceled if for any reason he or she was not living with his or her spouse, i.e., that coverage would stop and start depending upon physical residency? What if the person's spouse moved out of the marital residence? Would the contract of insurance be voided because of a unilateral act over which the person had no control? There is no separate or express exclusion notifying the parties that coverage will be forfeited for the person who is not currently living with the individual who was designated as the named insured. Is the definition of "spouse" intended to simply designate the class-one insureds at the time the insurance contract is executed or should it be applied like an exclusion at the time a class-one policy-holder is injured to defeat coverage? These questions demonstrate that the policy is ambiguous.

*Ambiguity in coverage is resolved in favor of the reasonable expectations of the insured.* We are compelled to resolve this ambiguity in favor of coverage. The Court in *Sanchez v. Herrera*, 109 N.M. 155, 159, 783 P.2d 465, 469 (1989), noted, "The typical insured does not bargain for individual terms within policy clauses; the insured makes only broad choices regarding general concepts of coverage, risk, and cost." The Court therefore held that "[t]he reasonable expectations of the insured ... provide the criteria for examining an insurance contract on the basis both of the actual words used and of unresolved issues that the insurance company has an obligation to address." *Id.* As a class-one insured who jointly purchased the policy, Ramiro had a reasonable expectation of coverage during the whole policy period notwithstanding marital conflicts or circumstances that could cause him to not physically live with Sallie. *See Federal Ins. Co. v. Century Fed. Sav. & Loan Ass'n*, 113 N.M. 162, 169, 824 P.2d 302, 309 (1992) (stating that when policy language is ambiguous, the reasonable expectations of the insured must be considered and the analysis "should focus primarily on protecting the one for whose benefits premiums have been paid ... and construing the policies liberally in favor of the insured

and strictly against the insurers" (quoting *CC Hous. Corp. v. Ryder Truck Rental*, 106 N.M. 577, 580, 746 P.2d 1109, 1112 (1987)). The policy did not contain any warnings that separation could result in forfeiture of coverage, and it is not reasonable to suppose that an insurance contract could be canceled on the basis of a non-risk-related factor that arose after insurance was secured. A policyholder has a right to expect stability and security of coverage. *See Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 330, 533 P.2d 100, 103 (1975) (holding that the insurer may not create gaps in uninsured motorist coverage by creating exclusions dependent upon location or vehicles).

■ *Exclusions that purport to limit uninsured motorist coverage of class-one insureds are void.* Even if the definition of "spouse" could be considered an express exclusion that limits Ramiro's coverage, we would not give effect to it. It has long been established that in uninsured motorist coverage policies even unambiguous exclusions that limit class-one coverage will not be enforced. *Id.* (holding that exclusion denying coverage if insured was riding in an uninsured vehicle was not valid because "it is not the intent of the [uninsured motorist] statute to limit coverage for an insured to a particular location or a particular vehicle"). In *Foundation Reserve Ins. Co. v. Marin*, 109 N.M. 533, 535, 787 P.2d 452, 454 (1990), this Court overruled *Willey v. Farmers Ins. Group*, 86 N.M. 325, 523 P.2d 1351 (1974). In *Willey*, the insured was a passenger in her own car when she was killed in an accident caused by the negligence of the uninsured driver who was driving her car. *Willey* held that an unambiguous policy definition of "uninsured motor vehicle" that excluded a vehicle owned by the named insured vitiated the insured's class-one coverage. *Id.* at 326, 523 P.2d at 1352. In *Marin*, we revisited *Willey* and held that, as *Chavez* noted, there are only two legitimate limitations on uninsured motorist recovery: that the insured be legally entitled to recover damages and that the negligent driver be uninsured. 109 N.M. at 535, 787 P.2d at 454. *Any* other exclusionary clause limiting recovery will not be enforced. *See, e.g., Stinbrink v. Farmer's Ins. Co.*, 111 N.M. 179, 180, 803 P.2d 664, 665 (1990) (holding that unambiguous uninsured motorist exclusion denying recovery for punitive damages was unenforceable); *Jimenez v. Foundation Reserve Ins. Co.*, 107 N.M. 322, 324–25, 757 P.2d 792, 794–95 (1988) (stating that "[t]he legislature intended that an injured person be compensated to the extent of insurance … purchased for his or her benefit." Notwithstanding the unambiguous language of an exclusion precluding recovery under more than one policy, the Court held that when "an injured insured is the beneficiary of a policy and either the insured or another has paid premiums for the benefit of the injured insured, then all policy coverages under which he or she is a beneficiary may be stacked."); *Schmick*, 103 N.M. at 221, 704 P.2d at 1097 (striking exclusionary clause that precluded recovery if insured was injured in a vehicle not described in the policy but owned by the insured); *Sloan v. Dairyland Ins. Co.*, 86 N.M. 65, 67, 519 P.2d 301, 303 (1974) (striking an exclusion that limited or eliminated uninsured motorist coverage if uninsured motorist coverage was available under another applicable policy).

This Court has consistently refused to enforce exclusions that attempt to limit uninsured motorist coverage to particular circumstances. Being separated from one's spouse at the time of an accident is no different analytically than being in an uninsured vehicle at the time of an accident. In neither circumstance may the insurance company deny coverage to its insured after accepting premiums for uninsured motorist coverage. "If the [uninsured motorist] statute is to be meaningful and controlling in response to the nature and extent of the coverage … all inconsistent clauses … must be judicially rejected." *Sloan*, 86 N.M. at 67, 519 P.2d at 303.

We do not today decide the question of whether an insurance company, by expressly precluding coverage to those spouses who do not live with the named insured, may validly deny insurance coverage *from the outset.* The resolution of that question depends upon the contract language, who was contracting for insurance, and who were the intended beneficiaries of that contract. That question

is not raised by the facts in the dispute involving Ramiro Loya.

■ The Smyth case, however, directly raises the issue of whether an insurer may validly limit coverage for *dependent minor children* by simply including a limitation in its definition of "relatives."

*Facts and proceedings—the Smyths.* Wayne Smyth contracted with State Farm for liability and uninsured motorist coverage for more than twenty years. Sean Smyth, Wayne's natural son, lived with Wayne and his natural mother Jane from the time he was born in 1974 until his parents' divorce in 1981. During this time, Sean admittedly was covered under the provisions of his father's uninsured motorist policy. After the divorce, Wayne and Jane agreed to joint legal and physical custody of Sean. Wayne provided monetary support, and Sean lived with his father every other weekend and during holidays for several years. State Farm agrees that Sean was also covered under his father's policy during this time period. Wayne remarried and had two more children. Wayne testified that his intent throughout the years was to provide continuous uninsured motorist protection for all of his children, including Sean. When Sean was fifteen, he and his father had a disagreement and Sean did not live in Wayne's house for about a year. Wayne, however, continued to support his son. During this period of estrangement, Sean was seriously injured in an automobile accident. Because Sean's medical expenses exceeded the policy amounts of other policies available for Sean's needs, a demand was made upon Wayne's uninsured motorist policy. State Farm refused to pay on the basis that at the time of the accident Sean *no longer* met the definition of an insured under Wayne's uninsured motorist policy.

*The Smyth policy.* Wayne's uninsured motorist policy states that State Farm "will pay damages for bodily injury ... an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." Another section of the uninsured motorist policy states

Insured—means the person or persons covered by uninsured motor vehicle coverage.

This is:

1. the first person named in the declarations;

2. his or her spouse;

3. their relatives; and

4. any other person while occupying [the named insured's car or a car driven by the named insured or his/her spouse].

To complicate matters, an "Amendatory Endorsement" was apparently sent to Wayne that states:

Section III—Uninsured and Unknown Motorists—Coverage U. The definition of 'Insured' under 'Who is an Insured' is changed to read: Insured—means the person or persons covered by uninsured and unknown motorists coverage.

The endorsement does not include parts 1–4 describing the individuals quoted above. To further complicate matters, another change notice was sent to Wayne stating that, regarding the uninsured motorist coverage,

Effective immediately, there now may be coverage for the first named insured and resident relatives when injured in a vehicle owned by or available for the regular use of you, your spouse or your relatives.

Finally, as in the Loya policy, in a section of the main policy, certain words are defined. In that section, "Relative" is defined as

a person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried and unemancipated child away at school.

*As a named insured, Wayne is entitled to recover amounts expended on behalf of his dependent child for damages suffered in an accident with an uninsured motorist.* State Farm complains that the trial court did not set forth what public policy is violated by an insurance policy that limits a named insured's right to recover damages on behalf of an injured child by providing coverage when the child lives with the named insured and taking it away when the child does not. We stated almost twenty years ago, however, that "the Legislature did not intend to allow the creation of a gap in coverage which is contrary to the purpose of the statute." *Chavez,* 87 N.M. at 330, 533 P.2d at 103. We emphasized that the purpose of the unin-

**8**

sured motorist statute is to protect an insured from losses that are uncompensated because of a tortfeasor's lack of liability coverage. *Id.* at 329, 533 P.2d at 102. Wayne is legally obligated and liable for his son's medical bills whether Sean lives with his mother or with him or at a boarding school. If Wayne cannot recover those losses because of an exclusion, that exclusion violates the public policy clearly expressed in *Chavez.*

*The policy is not clear regarding who is an insured.* As mentioned in the above discussion regarding the definition of "spouse" in the Loyas' State Farm policy, a policy may give rise to an ambiguity because it requires the party seeking insurance to untangle a web of provisions and related definitions in order to determine who the policy actually covers. *See, e.g., Schmick,* 103 N.M. at 220–21, 704 P.2d at 1096–97. Considering the context in which the parties contracted may also reveal an ambiguity even though apparently unambiguous language was used. *See Jaramillo,* 117 N.M. at 341, 871 P.2d at 1347. It would not be too difficult to simply state the names of all of the class-one individuals the contracting parties intend to protect on the declarations page and to expressly exclude any family member drivers that the insurance company is not willing to cover for liability insurance. *See Federal Ins. Co.,* 113 N.M. at 168, 824 P.2d at 308 (noting that "insurers have had over one hundred years to hone their policies into forms that would not ferry the unwary reader on a trip into Wonderland"); *Pribble v. Aetna Life Ins. Co.,* 84 N.M. 211, 213, 501 P.2d 255, 257 (1972) (finding it "curious" that simpler language clearly excluding a condition was not used); *Read v. Western Farm Bureau Mut. Ins. Co.,* 90 N.M. 369, 373, 563 P.2d 1162, 1166 (Ct.App.1977) ("Decade after decade, with regularity, the insured and the insurer fight for a bone, which includes the meaning of a word, a phrase or a provision of the insurance policy.").

As noted above, there is no ambiguity in the meaning of "lives with"; the ambiguity arises in determining whether that limitation applies, and if so, how it is applied. Does it mean that only children who live with the named insured at all times are insured? Does it mean that coverage fluctuates depending on where the child is currently living, i.e. that coverage exists when a child is living with his dad for a week?

Consideration of the context in which this contract was made also reveals an ambiguity in the terms of this policy. *See Mark V, Inc. v. Mellekas,* 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993) (holding that ambiguity may be discerned by fully examining the circumstances surrounding the making of an agreement and examining the contract terms in light of those circumstances). Here, a father contracted for uninsured motorist coverage for himself, his wife, and his children. The policy premium did not fluctuate depending on the number of children covered under the uninsured motorist policy. There was no express warning that, if a child lived with Wayne only temporarily, the policy only covered the period of time during which the child lived with him. The policy purported to provide coverage to "relatives" in one section, "resident relatives" in an amended endorsement, and "a person ... covered by uninsured ... motorist coverage" in a different amended endorsement. The word "relative" has a common and generally understood meaning, but Wayne was expected to look for a definition of that word on a different page to find out that it meant something more limited than his own child. Further, the policy expressly provided coverage for unemancipated and unmarried children living away from home who were in school, which could imply that the limited definition of "relative" did not apply to unmarried, unemancipated minor children. Certainly, it would make no sense to a reasonable father seeking family coverage that a policy provides coverage for his child who lives at a private boarding school in another state or who is away at college but does not provide the same coverage for his child not old enough for college who lives with his mother. The ambiguity must be construed in favor of coverage. As in *Chavez,* 87 N.M. at 329, 533 P.2d at 102, we hold that Sean was within the class of "innocent victims [to be protected] against uninsured tortfeasors." Sean is entitled to coverage as a class-one insured under the policy.

*Conclusion.* State Farm argues that in the Loya policy, "while living with" means that the individual must be actually and currently living in fact with the named insured

on a daily basis at the time of the accident, and that Ramiro's testimony that he had taken meals and slept with his wife during their separation period had no effect on that terminology. It argues that in the Smyth policy, however, the phrase "who lives with" means only that the individual must provide some "indication that he resides with his father *at all.*" Because State Farm has used language that may be ambiguously applied, it is able to argue both ways. It is exactly this kind of uncertainty of coverage that our rules requiring strict construction against the insurer and in favor of coverage are intended to guard against. In *Pribble,* we refused to charge the insured with the duty of reading and understanding a policy and then bar recovery by upholding a literal application of its terms and provisions. Instead, this Court held that the insured is bound to make such an examination of documents as would be reasonable under the circumstances and is held to that which he or she would be thereby alerted. 84 N.M. at 216, 501 P.2d at 260. Further, if a layman "would not understand its full impact were he to attempt to plow through it, the document will yield the maximum protection consistent with [its] language and the reasonable expectations of [the insured]." *Id.*

Given the fact that most individuals are not legally responsible financially for relatives other than their children or spouses and therefore do not normally intend to provide uninsured motorist coverage for those relatives, it is not necessarily against public policy for an insurance policy to preclude coverage to those other kinds of relatives not living with a named insured. However, for the reasons explained in this opinion, State Farm cannot preclude coverage to the named insureds, their spouses, and their children under the facts of these cases. Accordingly, we reverse the trial court in the Loya case and remand for entry of judgment in favor of Ramiro Loya, and affirm the trial court in the Smyth case.

IT IS SO ORDERED.

BACA, C.J., and FROST, J., concur.