2006-NMSC-033

139 P.3d 176

**HARTFORD INSURANCE COMPANY of the Midwest and Interstate Indemnity Insurance Company, Plaintiffs–Counter–Defendants–Appellees,**

v.

**Charles D. CLINE and Judith E. Davis, Defendants–Counter–Claimants–Appellants.**

**No. 29,506.**

Supreme Court of New Mexico.

June 20, 2006.

Stout & Stout, Mark L. Stout, Hobbs, NM, Templeman & Crutchfield, C. Barry Crutchfield, Lovington, NM, Michael B. Browde, Albuquerque, NM, for Appellants.

Yenson, Lynn, Allen & Wosick, P.C., Matthew A. Pullen, April D. White, Beall & Biehler, P.A., Kelley J. Friedman, Larry D. Beall, Albuquerque, NM, for Appellees.

## OPINION

CHÁVEZ, Justice.

{1} Charles Cline and Judith Davis have lived together since 1997. Although they are not married, they have held themselves out to the public as husband and wife. After Davis was involved in an automobile accident, she made a claim for underinsured motorist benefits as a Class I insured under insurance contracts issued only to Cline as the named insured. *See Morro v. Farmers Ins. Group,* 106 N.M. 669, 670–71, 748 P.2d 512, 513–14 (1988) (defining Class I insureds as named insureds under a policy, their spouse, and relatives living in the household; defining Class II insureds as those covered only because they occupy an insured vehicle). These contracts were issued by Hartford Insurance Company of the Midwest and Interstate Indemnity Insurance Company. Each contract extended Class I coverage to Cline as the named insured and his family members, as defined by each policy. With slight differences in language, "family member" is defined in each policy to mean "a person related to the named insured by blood, marriage or adoption who is a resident of the named insured's household, including a ward or foster child." Both Hartford and Interstate denied the claim for underinsured motorist benefits, asserting that Davis was neither a named insured nor a family member under their respective policies. She was, however, listed as a driver, along with Cline, on the declaration page of the Hartford policy.[1]

---

1. The declaration page also has the designation "MS" and both Davis and Cline are listed with an "M." The record does not contain an explanation as to what is meant by MS, i.e. whether this refers to the marital status of Davis and Cline. For this reason we do not believe it appropriate

{2} Following a declaratory judgment action filed by the insurance companies, a federal judge held that Davis was not entitled to underinsured motorist benefits under either policy because "New Mexico does not recognize the doctrine of common law marriage" and therefore Class I insurance coverage does not extend to domestic partners. Cline and Davis appealed to the Tenth Circuit, which certified the following question to this Court pursuant to the provisions of NMSA 1978, Section 39–7–4 (1997) [2]:

> Is excluding domestic partners from the definition of *family member* in an automobile-insurance policy invalid as contrary to the public policy of the state of New Mexico?

Because there is no express statutory language or indication of legislative intent in New Mexico that domestic partners must be included in the definition of family member for purposes of automobile insurance coverage, we answer the question certified to us in the negative.

## DISCUSSION

{3} Cline and Davis urge this Court to answer the certified question in the affirmative. Their argument is based on the public policy in New Mexico against family member exclusions in automobile policies, coupled with recently declared judicial, executive, and legislative policies providing legal protections to domestic partners. According to Cline and Davis, these policies preclude automobile insurance contracts from excluding domestic partners from coverage as family members.

{4} We agree that family member exclusions in automobile insurance policies are void as against the public policy of New Mexico. *See Estep v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 105, 111, 703 P.2d 882, 888 (1985) (holding that household exclusions in automobile liability insurance policies violate the public policy of New Mexico); *GEICO v. Welch*, 2004–NMSC–014, ¶ 3, 135 N.M. 452, 90 P.3d 471 (holding that "household exclu-

sions in umbrella policies related to liability and uninsured or underinsured automobile coverage are void as against public policy"). Although these cases involved contract language that excluded coverage for the entire class of household members as defined in the insurance contracts, we have also invalidated exclusions that purported to limit uninsured motorist coverage to a Class I insured. *See Loya v. State Farm Mut. Auto. Ins. Co.*, 119 N.M. 1, 8, 888 P.2d 447, 454 (1994) (invalidating a limitation of uninsured motorist coverage for a dependent minor child who was not living with the insured at the time of the accident, based on a policy definition of "relative" which required the child to be living with the insured unless the child was unmarried, unemancipated and away at school).

{5} In this case the insurance contracts at issue do not exclude the entire class of household members from underinsured motorist coverage. Cline and Davis contend that by not including domestic partners in the definition of family members, by implication domestic partners are excluded from coverage. If family member exclusions are invalid in New Mexico as against public policy, Cline and Davis argue, *a fortiori*, limiting the definition of family member by excluding domestic partners must also violate public policy. Their argument depends on whether the public policy of New Mexico requires that domestic partners be considered family members for purposes of automobile insurance contracts.

{6} Cline and Davis argue that recently declared judicial, executive, and legislative policies providing legal protections to domestic partners demonstrate that New Mexico's public policy recognizes domestic partners as "family members." As evidence of a judicial policy extending legal protections to domestic partners, Cline and Davis cite to *Lozoya v. Sanchez*, 2003–NMSC–009, 133 N.M. 579, 66 P.3d 948. In *Lozoya*, we permitted Sara Lozoya to pursue a claim for loss of consor-

for this court to consider the designation in answering the question certified to us by the federal Court.

**2.** Section 39–7–4 provides that "[t]he supreme court of this state may answer a question of law

certified to it by a court of the United States ... if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state."

tium when her domestic partner, Osbaldo Lozoya, was seriously injured. We held that a common law cause of action for loss of consortium was not limited to married partners because loss of consortium is a claim to recover compensation for damage to a *relational* interest with a person, not a legal interest. *Id.* at ¶ 20; *see also Fitzjerrell v. City of Gallup*, 2003–NMCA–125, ¶ 11, 134 N.M. 492, 79 P.3d 836. In so holding we were careful to note that "the State has a continuing interest in protecting the legal interest of marriage as well. Allowing an unmarried partner to recover for loss of consortium neither advances nor retracts from that interest." *Lozoya*, 2003–NMSC–009, ¶ 20, 133 N.M. 579, 66 P.3d 948. We agree with Cline and Davis that our ruling in *Lozoya* recognizes an important relational interest. However, our ruling in *Lozoya* was not intended to confer general contractual rights to domestic partners similar to those contractual rights enjoyed by married couples.

{7} Cline and Davis next cite to Executive Order No.2003–010, signed April 9, 2003, as additional proof that the public policy of New Mexico forbids the exclusion of domestic partners from the definition of family member in automobile insurance contracts. This Order, entitled "Establishing Benefits for Domestic Partners of State Employees," provides in relevant part:

> I, Bill Richardson, Governor of the State of New Mexico, by virtue of the authority vested in me by the Constitution and the Laws of New Mexico, do hereby order the General Services Department and the State Personnel Office to engage in negotiations with benefits providers to ensure that domestic partners of state employees are afforded the same benefits as spouses by July 1, 2003. Such benefits shall extend to domestic partners who are in a mutually exclusive, committed relationship, who share a primary residence for twelve or more consecutive months, who are jointly responsible for the common welfare of each other and who share financial obligations. Each state employee and domestic partner must execute an affidavit of domestic partnership . . . .

As important as this executive order is to domestic partners of state employees, our interpretation of the Order is not as broad as Cline and Davis' interpretation. The Order simply instructs the General Services Department to negotiate with benefits providers to extend to domestic partners of state employees those benefits that are available to spouses of state employees. The Order does not define spouse to include domestic partners nor does it interpret existing contracts to apply equally to spouses and domestic partners. A fair interpretation of the Order, however, does support a statement that the executive believes employment benefits that are available to a spouse of a state employee should also be available to a domestic partner of a state employee. Undoubtedly, the Governor was aware of the need for contracts to be modified to make sure that domestic partners receive the same benefits as dependents of state employees. *See* NMSA 1978, § 10–7B–6(A) (1989) ("Any such group benefits self-insurance plan shall afford coverage for employees' dependents at each employee's option."). Indeed, a reasonable inference is that since the executive order requires domestic partners to be jointly responsible for the common welfare of each other, they are dependents. *See Brokenbaugh v. N.J. Mfrs. Ins. Co.*, 158 N.J.Super. 424, 386 A.2d 433, 436 (Ct.App.Div.1978) (stating "the Commissioner indicates that family shall include those who live within the domestic circle of, and are economically dependent on, the named insured").

{8} Although Executive Order No.2003–010 may be viewed as some evidence of the public policy in New Mexico, the Order alone, without parallel action by the legislature, is not sufficient proof of the public policy of New Mexico. The predominant voice behind the declaration of public policy of the state must come from the legislature, with an additional supporting role played by the courts and the executive department:

> [I]t is the particular domain of the legislature, as the voice of the people, to make public policy. Elected executive officials and executive agencies also make policy, to a lesser extent, as authorized by the constitution or the legislature. The judiciary, however, is not as directly and politically

responsible to the people as are the legislative and executive branches of government. Courts should make policy ... only when the body politic has not spoken and only with the understanding that any misperception of the public mind may be corrected shortly by the legislature.

*Torres v. State,* 119 N.M. 609, 612, 894 P.2d 386, 389 (1995). In addition, "[w]e also have recognized the unique position of the Legislature in creating and developing public policy." *State ex rel. Taylor v. Johnson,* 1998–NMSC–015, ¶ 21, 125 N.M. 343, 961 P.2d 768.

{9} As evidence of legislative intent to extend benefits to domestic partners, Cline and Davis cite to the Uniform Health–Care Decisions Act, NMSA 1978, Sections 24–7A–1 to –18 (1995, as amended through 2000). This Act sets forth in priority order the persons lawfully entitled to make health-care decisions for a patient if the patient has been determined to lack capacity and no agent or guardian has been appointed or is not reasonably available. Section 24–7A–5. The priorities begin with (1) the spouse, followed by (2) "an individual in a long-term relationship of indefinite duration with the patient in which the individual has demonstrated an actual commitment to the patient similar to the commitment of a spouse and in which the individual and the patient consider themselves to be responsible for each other's well-being." Section 24–7A–5(B)(2). Other persons authorized through the Act to make health-care decisions in descending priority order include: (3) an adult child, (4) a parent, (5) an adult brother or sister, or (6) a grandparent. *See* § 24–7A–5(B)(3)–(6). We agree with Cline and Davis that this statute evinces the willingness of the legislature to permit domestic partners to make health care decisions for one another. However, we do not believe this Act demonstrates that the legislature intended to confer general contractual rights to domestic partners similar to those rights enjoyed by married couples, such as automatic inclusion as Class I insureds in automobile policies.

{10} While there have been indications, as cited by Defendants Cline and Davis and noted above, that the executive department and the judiciary might be willing to recognize domestic partners as "family members," the legislature has not given a clear indication that it is ready to define "family members" as including domestic partners for the purposes of automobile insurance policies. In fact, there have been several failed attempts in recent legislative sessions to pass legislation intended to extend the rights, protections and benefits enjoyed by spouses in a marriage to domestic partners, such as the "Domestic Partner Rights and Responsibility Act" and the "Domestic Partner Benefits" bills, which were both introduced in the 2005 legislative session. *See* S.B. 576, 47th Legislature, 1st Sess. (N.M.2005); H.B. 86, 47th Legislature, 1st Sess. (N.M.2005). These bills enjoyed some level of success in the legislature, with H.B. 86 passing the state House and the Senate Judiciary Committee, but both bills died when the legislature adjourned.

{11} We find it particularly significant to our discussion of whether New Mexico's public policy requires recognition of domestic partners as "family members" to note that the "Domestic Partner Rights and Responsibility Act" would have created a legal relationship between domestic partners that would have been equal to the legal relationship between spouses. Thus, domestic partners would have been liable for each other's debts and legal obligations to the same extent as a married spouse. Had the legislators believed the public policy of New Mexico required contracts to include domestic partners in the definition of "family member," the proposed legislation would not have been necessary.

{12} We believe this is the significant difference between spouses and domestic partners as "family members" in the automobile insurance policy at issue here. When an insured purchases automobile insurance, the coverage required by our mandatory financial responsibility statute must be extended to that liability imposed by law. *See* NMSA 1978, § 66–5–205.3(A)(2) (2003) (stating that "[a] motor vehicle insurance policy shall ... insure the person named in the policy ... against loss from the liability imposed by law"). Our cases regarding family or household exclusions in automobile insurance poli-

cies illustrate that we struck down those exclusions because they denied benefits even where liability was imposed by law. For example, in *Estep,* 103 N.M. at 108, 703 P.2d at 885, we recognized that a conflict existed between a family member exclusion in an automobile insurance policy and the liability imposed by law, because "a wife in this jurisdiction has a cause of action for injuries suffered because of her husband's negligence...." We found the exclusion invalid because "the family exclusion clause in the policy specifically carves out from coverage ... [persons] who are entitled by law to recover for the owner's or driver's negligence." *Id.* Thus, we determined in *Estep* that "the coverage required by the financial responsibility statutes must be extended to that liability imposed by law." *Id.* at 110, 703 P.2d at 887. Similarly, when we said in *Loya,* 119 N.M. at 3, 888 P.2d at 449, "[w]hen a married couple contracts for insurance coverage for the family, there is a presumption that the coverage applies with equal effect to both parties unless one of them is expressly excluded from coverage," we were describing the presumption that arises out of the legal relationship between the spouses in addition to the fact that they are members of the same household. In the case consolidated with *Loya,* we reasoned that a dependent child of the named insured father was entitled to recover under the father's uninsured motorist insurance because the father was "legally obligated and liable for his son's medical bills whether [the son] lives with his mother or with him...." *Id.,* 119 N.M. at 8, 888 P.2d at 454. We emphasized in each of these cases that the legal responsibility within the relationship between the named insured and the relative informed our decision that denying coverage was against public policy, stating:

> [g]iven the fact that most individuals are not legally responsible financially for relatives other than their children or spouses and therefore do not normally intend to provide uninsured motorist coverage for those relatives, it is not necessarily against public policy for an insurance policy to preclude coverage to those other kinds of relatives not living with a named insured.

*Id.* at 9, 888 P.2d at 455. Therefore, with no similar legal relationship between domestic partners as between spouses or other family members, and with no clear statement to date by the legislature expressing a public policy that recognizes domestic partners as family members in the context of automobile insurance policies, we are not convinced that the insurance policy's definition of "family members" violates New Mexico's public policy.

{13} Furthermore, New Mexico does not recognize common law marriage. *Hazelwood v. Hazelwood,* 89 N.M. 659, 556 P.2d 345 (1976). The absence of the legal state of marriage here means that the presumptions, rights and responsibilities enjoyed by legal spouses do not automatically extend to domestic partners. "If we were to say that the same rights that cannot be gained by common-law marriage may be gained by the implications that flow from cohabitation, then we have circumvented the prohibition of common-law marriage." *Merrill v. Davis,* 100 N.M. 552, 554, 673 P.2d 1285, 1287 (1983). Legal rights and responsibilities, such as insuring a domestic partner as a named insured under an automobile insurance policy, must be created by contract when domestic partners cohabit outside the marital relationship. Indeed, Hartford and Interstate concede as much when they state, "if Cline had intended Davis to be covered as a Class I insured under his policies, he could have easily achieved that result by simply listing her as a second named insured," indicating that an informed consumer could easily modify his or her insurance contract to provide the coverage expected for a domestic partner.

{14} We note that until domestic partners are recognized as "family members" by the public policy of New Mexico, they should require complete explanations of automobile insurance policies by their agents, and make sure that their contracts accurately reflect their expectations. Most purchasers of insurance will not know the difference in effect, particularly for stacking of coverages, between having status as a named insured and simply being listed as a driver. Insureds should expect their insurance agents

to explain exactly which coverages will be applicable to each driver. Without such explanation, the insured may in fact have the reasonable expectation that listing a domestic partner as an additional driver will provide the same coverage as asking for her to be a named insured, even though the insurance policy definitions, as here, will indicate otherwise.

## CONCLUSION

{15} If domestic partners are to enjoy automatic protections in insurance coverage equal to those enjoyed by married couples, it will be up to the legislature to make that policy, rather than the courts. " '[I]t is the duty of the Legislature to make laws and of the court to expound them, ... the subjects in which the court undertakes to make the law by mere declaration (of public policy) should not be increased in number without the clearest reasons and the most pressing necessity.' " *State v. Lavender,* 69 N.M. 220, 231–32, 365 P.2d 652, 660 (1961) (quoting *Barwin v. Reidy,* 62 N.M. 183, 307 P.2d 175, 181 (1957)). Until then, excluding domestic partners from the definition of family member in an automobile insurance policy is not invalid as contrary to public policy in New Mexico.

{16} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, and PETRA JIMENEZ MAES, Justices.

PATRICIO M. SERNA, Justice
(dissenting).

SERNA, Justice (dissenting).

{17} I respectfully dissent because I conclude that Charles Cline and Judy Davis are family members within the automobile insurance policy definition and that New Mexico public policy supports recognizing them as such. At the time of the automobile accident that gives rise to this lawsuit, Mr. Cline was approximately 80 years old and Ms. Davis was approximately 50 years of age. Mr. Cline and Ms. Davis have lived together continuously since 1997. He testified that the reason they chose not to formally marry was due to a promise to his deceased wife, Virginia, to whom he was married for 41 years.

"I told Virginia I won't never get married again," Mr. Cline stated. Ms. Davis declared, "he knew I loved him and I knew he loved me. And I just didn't feel that I had to have a piece of paper or that anyone else should have the right to tell us that we could or couldn't or should or should not. . . ." Ms. Davis testified that even though she never officially changed her name to Cline, most people know her as Judy Cline, and that she has credit cards issued to her as Judy Cline.

{18} Prior to the accident, both Mr. Cline and Ms. Davis took measures to make sure they were insured against such bad luck. In a sworn affidavit, Mr. Cline stated that he advised his insurance agents that Ms. Davis was his wife and that she could renew the policies and act on his behalf. Ms. Davis said that she was personally introduced to one insurance agent, and when speaking to Hartford on a recorded phone call, Mr. Cline introduced her as his wife. On the endorsement page of the Hartford policy, there is a line listing the named insured. Insured is stated in the singular and nothing about the form indicates that more than one name could or should be printed on the line. On the declarations page, by contrast, there is ample space for multiple drivers to be listed and both Mr. Cline and Ms. Davis are listed as drivers. Under the heading "MS," presumably for marital status, both drivers are listed as "M," presumably for married.

{19} Ms. Davis visited Mr. Cline's brother in the hospital and, upon returning from the hospital, another vehicle struck her car. The other driver died as a result of the accident. Due to the car crash, Ms. Davis is disabled. She testified that according to her doctor, "I will never be able to use my hand and leg or do the things that I used to do." Mr. Cline takes care of her daily needs, such as food and shelter. "I can't hold a frying pan. He helps me do the cooking. I can't get in the tub or get out by myself unless he puts me in there. Because I can't get up and I can't get out."

{20} After the accident, Mr. Cline and Ms. Davis claimed coverage for Ms. Davis' substantial injuries. Both Hartford and Interstate insurance companies denied coverage

and sought a declaration that Ms. Davis was not a family member within their policy definitions. We are now asked, "Is excluding domestic partners from the definition of family member in an automobile insurance policy invalid as contrary to public policy of the State of New Mexico?" I answer yes. In my mind, allowing Hartford and Interstate to deny coverage on these facts to a couple like Mr. Cline and Ms. Davis does violate New Mexico public policy. I concede that because we do not have a definitive statement from our Legislature, this case is close. However, in close cases in which this Court must employ its judgment until the Legislature definitively speaks, I am more comfortable upholding the insureds' contract expectations, *see Loya v. State Farm Mut. Ins. Co.*, 119 N.M. 1, 5, 888 P.2d 447, 451 (1994) (resolving language ambiguities affecting coverage in favor of the reasonable expectations of the insured), and deciding that Mr. Cline and Ms. Davis are family members, rather than announcing that an octogenarian caring for his disabled domestic partner is outside New Mexico's understanding of family. I am also troubled that Hartford and Interstate waited to clarify their position on coverage for Ms. Davis and the insurance companies' definition of family member until they were asked to pay a claim. It seems that it was within the insurance companies' power to assist Mr. Cline and Ms. Davis to fill out the forms to conform with the consumers' coverage expectations. In addition to these fairness concerns, I come to my public policy conclusion based on action from all three branches of state government.

{21} The Legislature in the 2005 session considered House Bill 86, otherwise known as the Domestic Partner Benefits Bill. The Bill specifically addressed insurance coverage and stated, a domestic partner "is jointly responsible for the common welfare of and shares financial obligations with another person." H.B. 86, 47th Leg., 1st Sess. (N.M. 2005). The House Consumer and Public Affairs Committee voted 4–3 in favor of the bill and recommended that it do pass, the House Business and Industry Committee voted 10–2 in favor of the bill and recommended that it do pass, and the bill did pass the House on the 25th day of the 2005 legislative session.

The Senate Public Affairs Committee voted 4–2 in favor of the bill and recommended that it do pass and the Senate Judiciary Committee postponed action indefinitely on the 37th day of the legislative session. The Senate also considered the Domestic Partner Rights and Responsibilities Act, Senate Bill 576. That proposed act declared that "[d]omestic partners have the same rights, protections and benefits under law, whether derived from statute, rule, common law or other provisions or sources of law, as spouses in a marriage." S.B. 576, 47th Leg., 1st Sess. (N.M.2005). The Senate Public Affairs Committee recommended a do pass, but action was postponed indefinitely in the Senate Judiciary Committee. I think the most we can discern with certainty from the legislative history is that the committees that did review and vote on these bills were overwhelmingly supportive of domestic partner benefits but that these bills were not a high enough priority in the 2005 session to receive a vote from the full Legislature. This history supports answering the certified question in the affirmative and concluding that Mr. Cline and Ms. Davis are family members more than this history supports answering the question in the negative and declaring that these domestic partners are not family members.

{22} The Legislature did pass the Uniform Health–Care Decisions Act, NMSA 1978, § 24–7A–1 to –18 (1995, as amended through 2000). In terms of who can make health care decisions for a patient, the Act grants a spouse first priority and then second priority to "an individual in a long-term relationship" to act as a surrogate. Section 24–7A–5(B). The Act does not grant greater rights and benefits to a spouse with marriage paperwork than to an individual in a long-term relationship, so I read this to be an indirect statement of legislative intent to treat domestic partners the same as spouses. This also more likely supports answering the certified question in the affirmative rather than the negative.

{23} The executive branch has also addressed domestic partners in a way that favors answering the certified question in the affirmative. Governor Bill Richardson

24

signed an executive order establishing benefits for domestic partners of state employees. The order provides for state government to "engage in negotiations with benefits providers to ensure that domestic partners of state employees are afforded the same benefits as spouses." Exec. Order No.2003–010 (Apr. 9, 2003). While this order has limited applicability to answering the certified question, it does tend to support the idea that state public policy is to treat domestic partners like spouses rather than to treat domestic partners as not having any recognizable relationship.

{24} Our judicial branch decisions are consistent with the direction of both the legislative and the executive branches. We have permitted domestic partners to pursue loss of consortium claims regardless of legal status. *Lozoya v. Sanchez*, 2003–NMSC–009, 133 N.M. 579, 66 P.3d 948. Since 1985, it has been against public policy in New Mexico to exclude household members from automobile insurance policies. *Estep v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 105, 703 P.2d 882 (1985). In 2002, we reaffirmed "that a restriction ... limiting coverage for household members violates New Mexico law and is a repudiation of our public policy." *State Farm Mut. Auto. Ins. Co. v. Ballard*, 2002–NMSC–030, ¶ 13, 132 N.M. 696, 54 P.3d 537. As recently as 2004, we reiterated this point when answering a certified question from the federal courts. This Court stated, "we conclude that family exclusions in liability and uninsured or underinsured motorist coverage offered through umbrella policies implicate a fundamental principle of justice and are contrary to New Mexico public policy." *Gov't Employees Ins. Co. v. Welch*, 2004–NMSC–014, ¶ 8, 135 N.M. 452, 90 P.3d 471. The Majority has not convinced me that its opinion is within the precedent of our earlier decisions.

{25} For the reasons stated above, I am compelled to dissent.