**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number:_____**

**Filing Date:   February 25, 2016**

**NO. S-1-SC-35145**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**NORMAN BENALLY,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Grant L. Foutz, District Judge**

Hector H. Balderas, Attorney General
M. Anne Kelly, Assistant Attorney General
Elizabeth Ashton, Assistant Attorney General
Santa Fe, NM

for Petitioner

Jorge A. Alvarado, Chief Public Defender
William O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Respondent

**OPINION**

**NAKAMURA, Justice.**

{1}      In this case, we hold that when law enforcement officers seized, impounded, and sealed a vehicle, under NMSA 1978, Section 31-27-5(A) (2002, amended 2015), they "ma[de] a seizure" of the currency that the vehicle contained. On June 23, 2011, Gallup police officers seized a vehicle. On June 29, they executed a warrant to search the vehicle and discovered $1295 in currency. The State filed a forfeiture complaint for the $1295 on July 27, which was within thirty days of the search but not within thirty days of the seizure of the vehicle. A provision of the Forfeiture Act then in effect required the State to file the forfeiture complaint "[w]ithin thirty days of making a seizure" of property. Section 31-27-5(A) (2002). Based on that provision, the district court dismissed the State's forfeiture complaint as untimely, and the Court of Appeals affirmed.

{2}      We note that in 2015 the Legislature amended the Forfeiture Act, NMSA 1978, §§ 31-27-1 to -11 (2002, as amended through 2015), to require that the State file a forfeiture complaint either "[w]ithin thirty days of making a seizure of property *or simultaneously upon filing a related criminal indictment . . . .*" Section 31-27-5(A) (emphasis added). The State filed the forfeiture complaint and the criminal indictment at the same time. Under the current statute, the State's forfeiture complaint may have

been timely, an issue that we do not address in this case. However, because the 2002 statute controls this case and because the officers "ma[de] a seizure" of the money when they seized the vehicle, we affirm.

## I.   BACKGROUND

{3}   On June 23, 2011, Norman Benally was driving a black Cadillac Escalade with a nonoperating headlight. Officer Houston Largo stopped him alongside eastbound Highway 66 in Gallup. During the stop, Officer Largo smelled marijuana and asked Benally for consent to search the vehicle. Benally declined. Officer Largo then called for the assistance of the K-9 patrol unit. Officer Angelo Cellicion arrived, accompanied by his K-9, Tiko. Tiko alerted the officers to the presence of controlled substances. Shortly thereafter, Danielle Benally, who was the registered owner of the vehicle, arrived at the scene. She also refused consent to the officers' search of the vehicle. The vehicle was then seized and towed to the Gallup Police Department's gated and locked impound lot. There, evidence tape was placed on the hood, the passenger and driver side doors, the rear doors, and the rear lift gate. The vehicle was sealed so that no one but the police officers could enter it.

{4}   On June 28, the State sought a warrant to search the vehicle for drugs, drug paraphernalia, and money linked to drug transactions. A warrant was issued, and the

2

following day, June 29, law enforcement agents searched the vehicle. They found 586.7 grams of marijuana; a digital scale; Benally's wallet, which contained currency, his driver's license, and his social security cards; and Danielle Benally's wallet, which contained currency, credit cards, and EBT cards. In total, law enforcement officials discovered $1295 during the search of the vehicle.

{5} On July 27, 2011, the State filed a criminal complaint against Benally, charging him with distribution of marijuana, conspiracy to distribute marijuana, possession of marijuana, and possession of drug paraphernalia. At the same time, the State filed a complaint for the forfeiture of the $1295, alleged to be drug proceeds.

{6} Benally moved to dismiss the forfeiture complaint as untimely. Benally pointed to former Section 31-27-5(A), which provided that "[w]ithin thirty days of making a seizure, the state shall file a complaint of forfeiture or return the property to the person from whom it was seized." Section 31-27-5(A) (2002). Benally argued that the forfeiture complaint should be dismissed because it was filed more than thirty days after the Gallup police officers seized and sealed the vehicle containing the currency. The trial court held a hearing on the motion and later dismissed the forfeiture complaint as untimely under former Section 31-27-5(A).

{7} On appeal, the State argued that the forfeiture complaint had been timely filed

3

because the thirty-day statutory limitations period ran from the date the property subject to forfeiture was discovered or, alternatively, from the time the search warrant was issued.

**{8}** In an opinion filed January 29, 2015, the Court of Appeals affirmed the trial court's dismissal of the forfeiture complaint. *State v. Benally*, 2015-NMCA-053, ¶ 1, 348 P.3d 1039, *cert. granted*, 2015-NMCERT-005 (No. 35,145, May 11, 2015). The Court of Appeals held that, under the plain language of former Section 31-27-5(A), the thirty-day limitations period began to run "when the officers impounded [Benally's] car and its contents on June 23, 2011." *Id.* ¶ 12. The appellate court reasoned that the limitations period began at the point of seizure; when the vehicle was seized on June 23, its contents, including the $1295, were also seized. *Id.* ¶ 9 ("[T]he contents of the vehicle were also seized by virtue of being in the impounded car."). The Court of Appeals concluded, "[s]ince the State failed to file a complaint for forfeiture within thirty days of that date, the district court properly dismissed the forfeiture action." *Id.* ¶ 12. We granted the State's petition for a writ of certiorari, exercising our jurisdiction under Article VI, Section 3 of the New Mexico Constitution and NMSA 1978, Section 34-5-14(B) (1972).

**{9}** Former Section 31-27-5(A) controls this case. *See Grygorwicz v. Trujillo*,

4

2006-NMCA-089, ¶ 16, 140 N.M. 129, 140 P.3d 550 ("[U]nless a contrary legislative intent is expressed, the statute of limitations in effect at the time an action is filed governs the timeliness of the claim." (internal quotation marks and citation omitted)). Under that statute, the State simply had thirty days from the date of the seizure to file a forfeiture complaint. Neither the original nor the amended version of the Forfeiture Act defines "seizure." Thus, we must interpret the meaning of "seizure" to decide the single issue of statutory interpretation that this case presents: Under former Section 31-27-5(A), did the Gallup police officers "mak[e] a seizure" of the $1295 when they seized, impounded, and sealed the vehicle that contained the currency?

## II. DISCUSSION

### A. Standard of review

{10}    The interpretation of a statute presents an issue of law that this Court reviews de novo. *Bank of New York v. Romero*, 2014-NMSC-007, ¶ 40, 320 P.3d 1. When interpreting a statute, this Court first looks to the text. *See* NMSA 1978, § 12-2A-19 (1997) ("The text of a statute or rule is the primary, essential source of its meaning."); *see also Bank of N.Y.*, 2014-NMSC-007, ¶ 40 ("[W]hen presented with a question of statutory construction, we begin our analysis by examining the language utilized by the Legislature, as the text of the statute is the primary indicator of legislative intent."

(alteration in original) (internal quotation marks and citation omitted)). "Under the rules of statutory construction, [w]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Id.* (alteration in original) (internal quotation marks and citation omitted); *see also* NMSA 1978, § 12-2A-2 (1997) ("Unless a word or phrase is defined in the statute or rule being construed, its meaning is determined by its context, the rules of grammar and common usage."). We also construe statutes to give effect to their object and purpose. NMSA 1978, § 12-2A-18(A)(1) (1997). Furthermore, "it is well established in New Mexico that, '[f]orfeitures are not favored at law and statutes are to be construed strictly against forfeiture.'" *State v. Nunez*, 2000-NMSC-013, ¶ 75, 129 N.M. 63, 2 P.3d 264 (alteration in original) (quoting *State v. Ozarek*, 1978-NMSC-001, ¶ 4, 91 N.M. 275, 573 P.2d 209).

**B.  The plain meaning of "seizure"**

{11}  "Seizure" is neither an obscure nor polysemic term in American law. A seizure indicates the dispossession of an owner of his or her property. Both the Supreme Court of the United States and the New Mexico appellate courts have explained that a seizure refers to an interference with a person's possessory interests in his or her property. *See, e.g.*, *Horton v. California*, 496 U.S. 128, 134 (1990) ("A seizure of the

6

article . . . would obviously invade the owner's possessory interest."); *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) ("A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." (citations omitted)); *United States v. Place*, 462 U.S. 696, 705-06 (1983) (finding that a seizure amounts to an "intrusion on possessory interests" and can even be a "brief detention[] of personal effects"); *State v. Bomboy*, 2008-NMSC-029, ¶ 9, 144 N.M. 151, 184 P.3d 1045 ("[T]he seizure aspect [of the rights guaranteed by Article II, Section 10 of the New Mexico Constitution and the Fourth Amendment of the United States Constitution] protects notions of possession."); *State v. Sanchez*, 2005-NMCA-081, ¶ 17, 137 N.M. 759, 114 P.3d 1075 ("[T]he seizure aspect protects notions of possession, at least insofar as it applies to objects."). Unsurprisingly, legal dictionaries reflect those statements. *See, e.g.*, *Seizure*, *Black's Law Dictionary* (10th ed. 2014) (defining "seizure" as "[t]he act or an instance of taking possession of a person or property by legal right or process"). This Court presumes that when the Legislature enacted former Section 31-27-5(A), it did so with knowledge of how New Mexico's appellate courts and the Supreme Court of the United States define and use the term "seizure." *See Kmart Corp. v. N.M. Taxation & Revenue Dep't*, 2006-NMSC-006, ¶ 15, 139 N.M. 172, 131 P.3d 22 ("We presume that the Legislature

knows the state of the law when it enacts legislation.").

{12}     Against the weight of the case law, the State suggests that under former Section 31-27-5(A) state officers "mak[e] a seizure" of property only when they knowingly and intentionally seize the property for the purposes of forfeiture. According to the State, "the Court of Appeals failed to recognize 'seizure' as an active verb." The State asserts that when the Gallup police officers impounded Benally's vehicle, they did not knowingly seize the currency because they were unaware of its existence. The State therefore argues that the police only seized the currency after obtaining a warrant to search the vehicle, discovering the currency pursuant to that warrant, and securing the currency after its discovery for the purpose of forfeiture.

{13}     The State's interpretation does not sufficiently attend to the statutory text. Former Section 31-27-5(A) uses "seizure" as an object. *See* § 31-27-5(A) (2002). The statute refers to a state of affairs, not a type of activity that entails a specific mental state. It is clear that the Legislature used the word "seizure" to refer to the dispossession of a person of his or her property, and that meaning is wholly consistent with how the Supreme Court of the United States and the New Mexico appellate courts have explained the concept. *See, e.g.*, *Jacobsen*, 466 U.S. at 113; *Bomboy*, 2008-NMSC-029, ¶ 9.

{14} Contrary to the State's suggestion, whether a law enforcement officer seizes a person's property does not depend on that officer's specific intent to take control of the property. Rather, what matters is that the officer's actions deprive the person of his or her possessory interests in property. *See Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 72 (1992) ("The facts alleged suffice to constitute a 'seizure' within the meaning of the Fourth Amendment, *for they plainly implicate the interests protected by that provision*." (emphasis added)). The mental state of the law enforcement official engaged in the act of dispossessing a person of his or her property is not significant; the effect on the property right is. *See id.* at 69 ("What matters is the intrusion on the people's security from governmental interference. Therefore, the right against unreasonable seizures would be no less transgressed if the seizure . . . was undertaken to collect evidence . . . or on a whim, for no reason at all.").

{15} Furthermore, in this case, attention to the mental state of the Gallup police officers when they seized the vehicle actually weakens the State's argument. The officers took control of the vehicle in order to have exclusive access to its contents. In the affidavit for the search warrant, a Gallup police officer stated his belief that the seized vehicle contained money linked to drug transactions. By issuing the search warrant, the district court concluded that this belief was supported by probable cause.

9

In light of these facts, the State is essentially arguing that an intentional taking of a vehicle with probable cause to believe it contains contraband does not rise to a seizure of the contraband where the vehicle is not taken with the certainty that it contains contraband. But whether contraband within a vehicle is seized does not turn on the distinction between an officer's justified belief that the vehicle contains contraband and the officer's certainty that it does. Simply put, the meaning of "seizure" does not depend on the epistemological distinction between a justified belief and certainty, and we refuse to impute such an odd meaning to the Legislature's clear usage.

{16}    The meaning of "seizure" in former Section 31-27-5(A) is its common one: When a law enforcement officer deprives a person of the possessory interests in his or her property, the officer has seized the property.

**C.    The effect of Section 31-27-4**

{17}    Despite the clear and unambiguous use of "seizure" in former Section 31-27-5(A), the State suggests that other provisions of the 2002 Forfeiture Act indicate "that the Legislature intended the word 'seizure' to have a more narrow meaning than its common meaning." Conceding that its interpretation of "seizure" departs from the common meaning, the State proposes that former Section 31-27-4 supports its

interpretation that the Gallup police only seized the $1295 when they discovered it pursuant to a warranted search of the impounded vehicle.

{18}     Prior to the 2015 amendments to the Forfeiture Act, Section 31-27-4 stated:

> Property may be seized by a law enforcement officer:
>
> A.     pursuant to an order of seizure issued by a district court based on a sworn application of a law enforcement officer from which a determination is made by the court that:
>
> (1)     there is a substantial probability that:
>
> (a)     the property is subject to forfeiture;
>
> (b)     the state will prevail on the issue of forfeiture; and
>
> (c)     failure to enter the order will result in the property being destroyed, removed from the state or otherwise made unavailable for forfeiture; and
>
> (2)     the need to preserve the availability of the property through the entry of the requested order outweighs the hardship to the owner and other parties known to be claiming interests in the property; and
>
> B.     without a prior court order, if the property alleged to be property subject to forfeiture is not a residence or a business, when:
>
> (1)     the seizure is incident to an arrest for a crime, a search conducted pursuant to a search warrant or an inspection conducted pursuant to an administrative inspection warrant and the law enforcement officer making the arrest or executing the search or inspection warrant has probable cause to believe the property to be property subject to forfeiture and that the subject of the arrest, search warrant or inspection warrant is an owner of the property; or
>
> (2)     the law enforcement officer making the seizure has probable cause to believe the property is property subject to forfeiture and that the delay occasioned by the need to obtain a court order would frustrate the seizure.

Section 31-27-4 (2002).

{19} In short, the State argues that the limitations period should only run from the time that a search warrant or seizure order is executed in order to effectuate New Mexico's preference for a warrant. Hence, the State argues that "seizure" in former Section 31-27-5(A) refers only to those instances where the State has lawfully taken control of property after executing a warrant or seizure order, as contemplated by former Section 31-27-4. We disagree that former Section 31-27-4 compels us to read "seizure," as the term is employed by former Section 31-27-5(A), as an event that necessarily takes place pursuant to a court order.

{20} First, former Section 31-27-4 cannot mean that a seizure necessarily occurs subsequent to a court order. The Forfeiture Act explicitly provides that, in certain circumstances, property may be seized without a prior seizure order or search warrant. Section 31-27-4(B) (2002). Indeed, both the original and amended provisions of the Forfeiture Act explicitly state that a law enforcement officer is authorized to seize property without a prior order or search warrant when the seizure is made incident to arrest or where "the delay occasioned by the need to obtain a court order would frustrate the seizure." *Compare* § 31-27-4(B) (2002) (authorizing seizures "without a prior court order" such as those made incident to arrest or in exigent circumstances), *with* § 31-27-4(E) (same). The State's argument that we should depart from the

12

common meaning of seizure is undermined by the very statute on which it relies.

{21} Second, the State's argument suffers a logical problem. Former Section 31-27-4 provides the conditions under which state officers are permitted to seize property. *See* § 31-27-4 (2002). The conditions that make seizures permissible, however, do not define what a seizure is. If the conditions that define a seizure were the same as the conditions that make seizures permissible, then it would make no sense to speak of impermissible or unreasonable seizures. Obviously, that is an absurd result; courts do speak of impermissible seizures. *See, e.g.*, *Soldal*, 506 U.S. at 69 ("[T]he right against unreasonable seizures would be no less transgressed if [an unlawful] seizure . . . was undertaken to collect evidence . . . or on a whim, for no reason at all."). And we do not interpret statutes to invite absurdity. *Cortesy v. Territory*, 1892-NMSC-030, ¶ 4, 6 N.M. 682, 30 P. 947).

{22} Third, the State's reading does not attend to the purpose of the limitations period set forth in former Section 31-27-5(A). The original Forfeiture Act provided a right for persons whose property was unlawfully seized to have it returned. *See* § 31-27-6(D)(1) (2002). Indeed, that was and remains one of the overarching purposes of the Forfeiture Act. *Compare* § 31-27-2(A)(2) (2002), *with* § 31-27-2(A)(2), (5). The State must comply with the Forfeiture Act. *Albin v. Bakas*, 2007-NMCA-076, ¶

13

1, 141 N.M. 742, 160 P.3d 923. To ensure that the State complied with the Act's requirements, the Legislature required the State to file a forfeiture complaint within thirty days of a seizure to establish the specific statutory basis for the seizure or return the seized property. *See* § 31-27-5(A)(4) (2002). Thus, the limitations period for filing a forfeiture complaint applies to *all* seizures, whether lawfully made pursuant to former Section 31-27-4 or not. To read "seizure" in former Section 31-27-5(A) to mean that the limitations period only applies to seizures made in compliance with former Section 31-27-4 would undermine the Forfeiture Act's purpose to ensure that, in every instance, the State establish the lawfulness of the seizure or return the seized property. In other words, the Forfeiture Act contemplates that the scope of "seizure[s]" of property, under former Section 31-27-5(A), is more extensive than "property subject to forfeiture," under former Section 31-27-4(B).

{23}    Fourth, the State's reading of "seizure" fails to satisfy another purpose of former Section 31-27-5(A). The Legislature created a thirty-day limitations period also to prevent the State from holding a person's property indefinitely. If, as the State suggests, a seizure was not accomplished until state officials acted pursuant to a court order or warrant, then they could retain exclusive control over a person's property without implicating the requirements of former Section 31-27-5(A) simply by

14

refraining from seeking a seizure order or search warrant.

**D.    Responding to policy concerns**

{24}    Under the plain meaning of former Section 31-27-5(A), the State must file a forfeiture complaint "[w]ithin thirty days of making a seizure"—that is, within thirty days of when the State first interfered with a person's possessory interests in his or her property. When the State impounded and sealed the vehicle on June 23, 2011, it interfered with Benally's property interests in the contents of the vehicle, including the money subject to the forfeiture complaint. In short, the State seized the vehicle. *See State v. Reynoso*, 702 P.2d 1222, 1224 (Wash. Ct. App. 1985) ("An impoundment, because it involves the governmental taking of a vehicle into exclusive custody, is a 'seizure' in the literal sense of that term."). When it did so, it also "ma[de] a seizure" of the contents of the vehicle because it deprived Benally of his possessory interests in them. Section 31-27-5(A) (2002).

{25}    The State suggests that this holding effectively requires law enforcement officers to intuit the presence of forfeitable material to make a timely forfeiture filing. This argument is not well taken. The plain reading of former Section 31-27-5(A) did not require law enforcement officers to intuit what seized vehicles may contain. Rather, former Section 31-27-5(A) placed a clear burden on the officers to obtain a

warrant, to search the seized vehicle and its seized contents, and, if forfeitable material was discovered, to file a forfeiture complaint within thirty days of the seizure.

{26} The State responds that such a limitations period was unrealistic, but that contention is inapposite. Whether thirty days from the seizure of a vehicle was sufficient time for law enforcement officials to lawfully search the vehicle and, if proper, file a forfeiture complaint is irrelevant to the interpretation of former Section 31-27-5(A). That is a policy question squarely within the Legislature's ambit. *See Hartford Ins. Co. v. Cline*, 2006-NMSC-033, ¶ 8, 140 N.M. 16, 139 P.3d 176 (recognizing "the unique position of the Legislature in creating and developing public policy" (internal quotation marks and citation omitted)). This Court will not effectively amend the requirements for filing a forfeiture complaint by tinkering with the plain meaning of "seizure" in Section 31-27-5(A).

**III.  CONCLUSION**

{27} For the foregoing reasons, the Court of Appeals correctly interpreted Section 31-27-5(A) (2002), and its judgment is affirmed.

{28}   **IT IS SO ORDERED.**

_____

**JUDITH K. NAKAMURA, Justice**

**WE CONCUR:**

_____

**BARBARA J. VIGIL, Chief Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**

17